In Re: Condemnation by the Commonwealth of Pennsylvania, Department of Transportation, of Right-of-Way for Legislative Route 1021, Section 3TR/W, a Limited Access Highway, in the City of Pittsburgh. Property of Max and Frances Gross. Claim No. 0213115, Parcel No. 95. United States, Appellant.

Argued May 2, 1978, before President Judge Bow-
MAN and Judges WILKINSON, JR., MENCER, ROGERS,
BLATT and DiSALLE. Judge CRUMLISH, JR. did not par-
ticipate.

*Wynette J. Hewett,* with her *Gilbert E. Andrews,
Richard Farber, M. Carr Ferguson,* Assistant Attor-
ney General, and, of counsel, *Blair A. Griffith,* United
States Attorney, and *Craig R. McKay,* Assistant
United States Attorney, for appellant.

*William P. Bresnahan,* Assistant County Solicitor,
with him *Alexander J. Jaffurs,* County Solicitor, for
appellee, County of Allegheny.

*John Regis Valaw,* Tax Lien Solicitor, for School
District of Pittsburgh and City of Pittsburgh.

OPINION BY JUDGE MENCER, June 28, 1978:

Max Gross and Frances Gross, husband and wife
(Gross) purchased, in 1959, a tract of real property in
Pittsburgh, Pennsylvania. Thereafter, this property
became encumbered by three mortgages. The first

mortgage held by E. B. Hostoffer and his wife was given to secure the payment of $25,000 for the purchase of the property and was recorded on June 24, 1959. The second mortgage held by Commercial Bank and Trust Company, in the amount of $28,000, was recorded on December 11, 1968. A third mortgage held by the United States was given to secure the payment of certain taxes,[1] in the amount of $137,164.55, and was recorded on July 3, 1969. The property also became encumbered by liens based upon unpaid city, county, and school taxes.

The instant case was initiated by the Department of Transportation of the Commonwealth of Pennsylvania's paying into the Court of Common Pleas of Allegheny County (Court) the sum of $80,000, the estimated just compensation for the taking of the real property owned by Gross, for distribution to those parties who had claims against the property. A special master was appointed for the purpose of determining the order of priority of the various claims. The master filed his report and, on March 21, 1977, the Court adopted the master's report and ordered distribution of the fund. On April 6, 1977, the Court amended its prior order of distribution "to conform to the Report of the Master." The United States, one of the claimants, filed a motion for a stay of the order of April 6, 1977, on the ground that the order as amended

---

[1] The federal mortgage was given to secure the payment of Federal Insurance Contribution Act taxes and income taxes required to be withheld from the wages of employees of Golden Triangle Sausage Company, of which Max Gross was president and major stockholder. In addition to the mortgage, Golden Triangle Sausage Company agreed to make monthly payments in the amount of $1,000 to reduce the outstanding tax liabilities. In exchange for the mortgage, the United States agreed to subordinate its lien against the corporation's assets so that loans could be obtained to finance the continued operation of the business.

did not conform to the master's report. On April 29, 1977, the Court denied the United States' motion to amend its order of April 6, 1977, and this appeal followed.

The Court, after making allowance for a master's fee of $1300, ordered the fund deposited with the Prothonotary distributed in the following manner:

1. City of Pittsburgh and School District
   of the City of Pittsburgh .......... $ 4,666.31
2. City of Pittsburgh ................ $25,878.71
3. County of Allegheny .............. $ 3,736.64
4. E. B. Hostoffer et ux. ............. $ 7,306.15
5. Commonwealth Bank and Trust Company (Keystone Bank) ............ $36,608.71
6. The remaining balance to the United States of America

Under this arrangement, the United States of America would receive $503.48 out of the money deposited with the Prothonotary. The issue presented, therefore, is whether or not the United States is entitled to any priority which would entitle it to a better position in the distribution order.

The question of the possible priority of a federal lien in relation to competing interests is a question which must be determined by federal law and not by the law of the individual states. *United States v. Security Trust & Savings Bank,* 340 U.S. 47 (1950). The federal law governing the question of whether or not a federal lien is to be given priority over competing interests is the rule of "first in time, first in right." *United States v. City of New Britain,* 347 U.S. 81 (1954). In order for any interest to be recognized as "first in time," however, it is necessary under federal law for that interest to be choate. And, in order to be choate, under federal law, the identity of the lienor must be ascertained, the exact property subject to the lien must be specified, and the exact amount of the lien

must be stated. *United States v. Lambert,* 362 F.Supp. 609 (D. Neb. 1973).

In the instant case, federal law and not the law of the Commonwealth of Pennsylvania must be applied initially because the priority of a federal lien is in question. Federal law states that the earliest choate lien to be recorded is the first one entitled to priority on the distribution list. Applying this law to the facts of this case produces the following results.

The first mortgage would be paid the full amount of its claim ($7,306.15); the second mortgage would be paid the full amount of its claim ($36,608.71); the City of Pittsburgh, County of Allegheny, and the School District of the City of Pittsburgh would receive the full amount of their choate claim ($4,666.31); and the third mortgage, the federal mortgage, would be entitled to the full amount of its claim but could only receive the remaining funds available, after payment of the master's fee, of the $80,000 deposited ($30,118.83). The remaining tax claims amounting to $25,878.71 would receive zero dollars.

However, federal law governs only the priority of the federal lien. State law governs the order of distribution for all other lienholders. *United States v. City of New Britain, supra.* The law of the Commonwealth of Pennsylvania gives priority to the claims of the City of Pittsburgh, County of Allegheny, and School District of the City of Pittsburgh over the competing mortgage claims, whether or not they were recorded at an earlier time. Section 2 of the Act of May 16, 1923, P.L. 207, *as amended,* 53 P.S. §7103.

The rules of priority, however, under our state law are inconsistent with the federal law. Under our state law, the claims of the city, county, and school district are entitled to priority over the competing mortgage claims, even though those claims arose after the mortgages had been recorded. Thus, if our state law were

controlling, the distribution of funds would be in the following manner:

| | |
|---|---|
| City, county, and school district claims . | $34,281.66 |
| First mortgage | $ 7,306.15 |
| Second mortgage | $36,608.71 |
| Federal mortgage (remainder of fund) | $ 503.48 |

The obvious effect of according priority to inchoate interests over the federal mortgage under our state rules of priority is to impair the federal interest. It is well settled, however, that state law may not impair or supersede the priority accorded a federal lien by federal law. On the contrary, the priority of a federal interest must be determined under federal law. *United States v. City of New Britain, supra.* Despite this well-established principle, the court's amended order of April 6, 1977 distributes the fund in accordance with our state law, and thus in contravention of the controlling federal law.

As the special master implicitly recognized, both state and federal policies may be reconciled, thereby according effect to each. The problem central to this case is the circular order of priority of claims created by the conflicting state and federal policies involved. There is, however, no reason to do violence to the policies underlying either system of priority. The federal interest is accorded proper weight if it is subordinated only to the extent required by federal law. The state's interest is accorded weight and significance if the fund representing the amount of claims due priority over the federal claim under federal law is then divided according to the rules of priority of state law.

Here, the United States was entitled to share in the fund to the extent of $30,118.83, since only the holders of competing interests which were choate at the time the federal mortgage was recorded were entitled to priority over it. Thus, state rules of priority govern

with respect to $48,581.17, the remainder of the fund. Under state law, the city, county, and school district claims were entitled to be first paid. The first and second mortgages would then be entitled to the remainder of the fund. Thus, the fund, after payment of a master's fee, should have been divided as follows:

United States of America ............ $30,118.83
City of Pittsburgh and School District
    of the City of Pittsburgh .......... $ 4,666.31
City of Pittsburgh ................... $25,878.71
County of Allegheny ................. $ 3,736.64
E. B. Hostoffer, et ux. (first mortgage) $ 7,306.15
Commonwealth Bank and Trust Company
    (second mortgage) .............. $ 6,993.36

This schedule of distribution applies federal law as to the priority of the federal lien and applies our state law as to the priority of all other liens.

Order reversed and remanded for entry of an order of distribution not inconsistent with the above opinion.

ORDER

Now, this 28th day of June, 1978, the order of the Court of Common Pleas of Allegheny County, dated April 6, 1977, is reversed, and the above captioned case is remanded to said court for entry of an order of distribution not inconsistent with our opinion.