CITY OF McKEESPORT, School District of City of McKeesport

v.

DELMAR LEASING CORPORATION, with notice to its heirs and assigns, owners or reputed owners

Brown–Kellogg, Inc., Appellant.

Commonwealth Court of Pennsylvania.

Argued Sept. 23, 1994.
Decided March 14, 1995.

Michael D. Seymour, for appellant.
Beth S. Mills, for appellees.

Before DOYLE and FRIEDMAN, JJ., and KELTON, Senior Judge.

FRIEDMAN, Judge.

Brown–Kellogg, Inc. (Brown–Kellogg) appeals from an order of the Court of Common Pleas of Allegheny County granting the Petition to Quiet Tax Title and Approve Sheriff's Sale (Petition) filed by the City of McKeesport (City) and the School District of the City of McKeesport (School District), (collectively, McKeesport). We affirm.

Delmar Leasing Corporation (Delmar), as owner of property located in the City, failed

to pay City and School District taxes so that, in 1985 and 1986, tax liens were recorded against the property. Subsequently, on July 7, 1986, Brown–Kellogg recorded a $400,000 mortgage against this same property. On January 6, 1992, McKeesport acquired the property at a sheriff's sale,[1] initiated by a Writ of Scire Facias Sur Tax Lien.[2] Delmar, owner of the affected property, was sent notification of the sheriff's sale by regular and certified mail, requiring a signed receipt. However, Brown–Kellogg, as mortgagee, was notified of the date of the impending sale by regular mail, certificate of mailing.[3] (R.R. at 26a, 91a). Neither Delmar nor Brown–Kellogg appeared to bid for the property.

At the time of the sheriff's sale, the United States Postal Service, Delmar's tenant, had paid $13,997.44 in garnished rent money into an escrow account in connection with separate proceedings involving Delmar in the United States District Court for the Western District of Pennsylvania. This federal court proceeding ended in a Consent Order, dated February 2, 1993, over one year after the sheriff's sale of the property.

On February 2, 1994, McKeesport filed a Petition for Validation of Sheriff's Sale and Divestiture of Mortgage which, subsequently, was converted to the Petition currently under consideration. (R.R. at 4a–5a.) Following oral argument on the matter, the trial court granted McKeesport's Petition. The trial court held that Brown–Kellogg received proper notice of the sale, so that when Brown–Kellogg failed to bid on the mortgaged real estate at the sale, Brown–Kellogg's mortgage was divested by operation of law and the purchaser took the property free and clear of this lien. The trial court also held that Delmar's tax liens, docketed in 1985 and 1986, were satisfied by the sale of the property rather than by the monies being held in escrow in U.S. District Court. Brown–Kellogg now appeals from that determination.[4]

## I.

In this case, the central issue is requisite notice of a sheriff's sale to a mortgagee, notice that the parties agree is governed here by Pa.R.C.P. Nos. 3129.1, 3129.2 and 3129.3.[5] Brown–Kellogg argues that the trial

1. The sheriff's sale was originally attempted on October 7, 1991 but failed for lack of notice, and a "resale" or, more accurately, rescheduling was held on January 6, 1992. (R.R. at 10a, 91a.) The sheriff's sale was the result of tax liens against the property entered for City taxes for the years 1983 through 1986 in the amount of $9,543.10 and for School District taxes for tax years 1983 through 1987 in the amount of $28,-528.50. Of these totals, tax liens in the amount of $7,626.50 were recorded by the City and School District prior to Brown–Kellogg's recording of its mortgage. (R.R. at 91a–92a.)

2. Scire facias is a "judicial writ, founded upon some matter of record, such as a judgment or recognizance and requiring the person against whom it is brought to show cause why the party bringing it should not have advantage of such record." The Latin term is used to designate both the writ and the whole proceeding. Black's Law Dictionary 1208 (5th ed. 1979).

3. A certificate of mailing refers to United States Postal Form 3817 which can be obtained at the post office for a fee and is stamped as proof of the date of mailing. This form can also evince the date of filing in certain circumstances. See Sheets v. Department of Public Welfare, 84 Pa.Commonwealth Ct. 388, 479 A.2d 80 (1984).

4. Our scope of review is limited to determining whether the trial court abused its discretion,

rendered a decision with lack of supporting evidence or clearly erred as a matter of law. Molchan Appeal, 94 Pa.Commonwealth Ct. 423, 503 A.2d 1051 (1986).

5. Pa.R.C.P. No. 3190 states that a judgment in rem in an action or proceeding upon, inter alia, a municipal tax claim, shall be enforced against the real property subject to the claim in accordance with Rules 3180 to 3183 governing the enforcement of judgments in mortgage foreclosure. Pa. R.C.P. No. 3181 provides that the procedure for the enforcement of a judgment shall be in accordance with the rules governing the enforcement of judgments for the payment of money with respect to ... (f) Notice of Sale, Stay, Continuance:—Rule 3129. This rule provides in pertinent part:

**Rule 3129.1.**
(a) No sale of real property *upon a writ of execution* shall be held until the plaintiff has filed with the sheriff the affidavit required by subdivision (b) and the notice required by Rule 3129.2 has been served.
(b) *The affidavit shall set forth ... the name and address or whereabouts of*
(1) the owner or reputed owner of the real property and of the defendant in the judgment; and
(2) *every other person who has any record lien on that property;* and

court erred in holding that Brown–Kellogg was properly notified of the sheriff's sale under Pa.R.C.P. No. 3129.2. Brown–Kellogg maintains that, as mortgagee of the property, it has a legally protected property interest entitling it to due process of law; that is, it was entitled to notice reasonably calculated to reach the mortgagee and apprise him of the pending tax sale. *Mennonite Board of Missions v. Adams*, 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983). Here, Brown–Kellogg claims that its notice of the upcoming sheriff's sale was not reasonably calculated to reach Brown–Kellogg. In fact, although the certificate of mailing indicates that notice was mailed to Brown–Kellogg on December 5, 1991, (R.R. at 26a), Brown–Kellogg denies ever having received such notice.

■ Initially, we note that here we have only Brown–Kellogg's representation that it did not receive the mailed notice. The notice consisted of a letter addressed to Brown–Kellogg's principal place of business as listed with the Pennsylvania Corporation Bureau, accompanied by U.S. Postal Form 3817, certificate of mailing. There is no contention that notice was mailed to Brown–Kellogg at the wrong address or that it was returned by the post office. By law, such notice is presumed to have been received by Brown–

Kellogg. Pa.R.C.P. No. 440(b); *Chartiers Industrial and Commercial Development Authority v. Allegheny County Board of Property Assessment, Appeals and Review,* 165 Pa.Commonwealth Ct. 671, 645 A.2d 944 (1994). Brown–Kellogg's denial of receipt, by itself, is insufficient to rebut this presumption. *Id.; Deveaux v. Palmer,* 125 Pa.Commonwealth Ct. 631, 558 A.2d 166 (1989).

■ Nevertheless, noting that notice provisions are to be strictly construed to insure against deprivation of property without due process, *In re Tax Sale of 1980 Under Real Estate Tax Sale Law of 1947,* 78 Pa.Commonwealth Ct. 49, 466 A.2d 1112 (1983), Brown–Kellogg contends that the trial court erred when it determined that Brown–Kellogg's *unreceived* notice provided it with the requisite due process; rather, Brown–Kellogg claims that, absent any other notice, such unreceived notice was not consistent with the United States Supreme Court's opinion in *Mennonite,* our supreme court's opinion in *First Pennsylvania Bank, N.A. v. Lancaster County Tax Claim Bureau,* 504 Pa. 179, 470 A.2d 938 (1983), or this court's opinion in *Muhlenberg Township Authority v. Fisher,* 94 Pa.Commonwealth Ct. 351, 503 A.2d 1022 (1986).[6] In pursuing this argu-

(3) every other person who has any record interest in that property which may be affected by the sale; and
(4) every other person who has any interest in that property not of record which may be affected by the sale and of which the plaintiff has knowledge.
**Rule 3129.2.**
(a) *Notice of the sale of real property shall be given* by handbills ..., *by written notice as provided by subdivision (c) to all persons whose names and addresses are set forth in the affidavit required by Rule 3129.1,* and by publication....
....
(c) *The written notice* shall be prepared by the plaintiff, shall contain the same information as the handbills ... and *shall be served at least thirty days before the sale on all persons whose names and addresses are set forth in the affidavit required by Rule 3129.1.*
(1) *Service of the notice shall be made*
(i) upon a defendant in the judgment who has not entered an appearance and upon the owner of the property

(A) by the sheriff in the manner prescribed by Rule 402(a) for the service of original process upon a defendant, or
(B) by the plaintiff mailing a copy in the manner prescribed by Rule 403 to the addresses set forth in the affidavit; or ...
....
(iii) *upon each other person named in the affidavit by the plaintiff by ordinary mail at the address set forth in the affidavit with the return address of the plaintiff appearing thereon. **The plaintiff shall obtain from the U.S. Postal Service a Form 3817 Certificate of Mailing. Service shall be complete upon mailing.** If the mail is returned the validity of the service shall not be impaired and the sale shall proceed at the time fixed in the notice.*
Pa.R.C.P. Nos. 3129.1 and 3129.2 (emphasis added).

**6.** In *Mennonite,* a mortgagee appealed from a grant of a petition to quiet title, claiming that it had not received constitutionally adequate notice of the pending tax sale under an Indiana statute which provided that notice of a tax sale be given to the property owner by certified mail but *did not provide for notice to the mortgagee* of the property. The United States Supreme Court re-

ment, Brown–Kellogg claims that, like the property owner, it was entitled to notice by certified mail.

Brown–Kellogg raises a number of thought provoking constitutional issues regarding notice, and it may be that under other circumstances Brown–Kellogg's position would be correct. Here, however, both the property owner and the mortgagee had the same president, Mr. Arthur Spangol.[7] (R.R. at 62a, 138a, 141a–42a). It is admitted that proper notice was given to the owner, Delmar; therefore, its president, Spangol, presumably received proper notice. Under these circumstances, we do not believe that Mr. Spangol or the other company of which he was president, Brown–Kellogg, can correctly contend denial of proper notice. Rather, notice to Delmar by certified mail, evidenced by a signed receipt, (R.R. at 28a), was actual notice to Brown–Kellogg.

This determination is consistent with our decision in *Hass Appeal,* 96 Pa.Commonwealth Ct. 452, 507 A.2d 1294 (1986), *appeal denied,* 514 Pa. 640, 523 A.2d 346 (1987), in which we held that a property owner was not entitled to set aside the tax sale of her property on grounds of a procedural due process violation where, although not notified of the sale in accordance with the statute, she was, nevertheless, aware of the pending tax sale. We reasoned that where evidence of actual notice exists, requiring any more would elevate form over substance. Persuaded by this viewpoint, we do not determine whether notice under Pa.R.C.P. No. 3129 is improper or constitutionally infirm where, by virtue of its relationship with Delmar, Brown–Kellogg had actual notice of the sale of the property.[8]

fused to uphold the Indiana tax sale statute, holding that because mortgagees have legally protected property interests that are significantly affected by a tax sale, they are entitled to notice reasonably calculated to apprise them of the pendency of the action and afford them the opportunity to present their objections. *Id.* The Court concluded that neither notice by publication and posting nor notice mailed to the property owner was adequate to notify the mortgagee because a reasonable person would not adopt these methods if he intended the mortgagee to learn of the sale. *Id.* The Court reasoned that published and posted notices, designed primarily to attract prospective purchasers of the property, were unlikely to reach mortgagees who, although having an interest in the property, make no special efforts to keep abreast of such notices. Likewise, the Court explained that notice to the property owner, who is not in privity with his creditor and who has failed to take steps necessary to preserve his own interest, could not be expected to lead to actual notice to the mortgagee. Accordingly, the Court determined that where a mortgagee is reasonably identifiable, *constructive notice by publication must be supplemented by notice mailed to the mortgagee's last known address,* or by personal service as a minimum constitutional precondition to such a sale.

In *First Pennsylvania Bank, N.A.,* pursuant to a remand from the United States Supreme Court in light of *Mennonite,* the Pennsylvania Supreme Court held that the notice provision contained in Pennsylvania's Real Estate Tax Sale Law (Tax Sale Law), Act of July 7, 1947, P.L. 1368, *as amended,* 72 P.S. § 5860.602, which did not require either personal service or service by mail to a record mortgagee of an impending tax sale, violates the mortgagee's constitutional due process rights. Similarly, in *Muhlenberg,* we held

that failure to provide notice to a lienholder upon the sale of a parcel of land at a tax sale meant that the lien was not discharged and the purchasers took the property subject to the lien. *See also In re Upset Sale, Tax Claim Bureau of Berks County,* 505 Pa. 327, 479 A.2d 940 (1984).

We recognize that in the cases cited, the courts determined that the subject mortgagee or lienholder was deprived of due process because he did not receive mailed notice of the tax sale affecting his property interest. However, we note that in each case, the mortgagee or lienholder failed to receive such notice because no notice was ever mailed. Here, by contrast, notice was sent to Brown–Kellogg by regular mail, certificate of mailing, to its proper corporate address. (R.R. at 26a.) In addition, the circumstances of this case differ in that the same person served as president of both Delmar and Brown–Kellogg; thus, notice to Delmar was also notice to Brown–Kellogg.

7. In addition, Kathleen Spangol served as secretary for both corporations. (R.R. at 62a, 138a, 141a–42a.)

8. Here, the trial court determined that Brown–Kellogg received proper notice of the sheriff's sale pursuant to Pa.R.C.P. No. 3129.2, and, therefore, it did not need to discuss McKeesport's alternate theory that Brown–Kellogg received actual notice of the sale by virtue of its relationship with Delmar. Although we affirm the trial court's decision, we do so based on the actual notice theory. Where the result is correct, an appellate court may affirm a trial court decision on any ground without regard to the ground relied upon by the trial court itself. *Appeal of the City of Scranton,* 144 Pa.Commonwealth Ct. 94, 600 A.2d 705 (1991).

Brown–Kellogg maintains, however, that even if received, there are two reasons why the notice fails to meet constitutional due process standards. First, Brown–Kellogg asserts that the notice is deficient because it does not apprise the mortgagee of the effect of the sale upon its lien; i.e., that the property would be sold free of its mortgage. We cannot agree.

Although Brown–Kellogg claims that Pa. R.C.P. No. 3129.2 does not discuss the effect of a sale upon a lien, we note that Rule 3129.2 provides that written notice include the following:

> (1) a brief description of the property to be sold, its location, any improvements, the judgment of the court on which the sale is being held, the name of the owner or reputed owner, and the time and place of sale, and
>
> (2) a notice directed to all parties in interests and claimants that a schedule of distribution will be filed by the sheriff on a date specified by the sheriff not later than thirty days after sale and that distribution will be made in accordance with the schedule unless exceptions are filed thereto within ten days after the filing of the schedule.

Pa.R.C.P. No. 3129.2(b). This information, fully provided here, is sufficient to put a mortgagee on notice that its property interest may be discharged by the sale of the property.

Second, Brown–Kellogg contends that the notice does not satisfy due process requirements because it never provided for a hearing prior to the sale so that Brown–Kellogg would have an opportunity to show why its mortgage should not be divested by the sale. In support of this contention, Brown–Kellogg relies on three cases decided by this court. In *In re Petition of Tax Claim Bureau of Westmoreland County*, 149 Pa.Commonwealth Ct. 532, 613 A.2d 634, *appeal denied*, 533 Pa. 615, 618 A.2d 404 (1992), we held that because a hearing on the rule to show cause is required to afford an opportunity to object to the judicial sale, a mortgage was not divested by the judicial sale of property where the trial court continued the hearing on the rule to show cause without notify-ing the mortgagee of the new hearing date. In *Capenos v. Lawrence County Tax Claim Bureau*, 149 Pa.Commonwealth Ct. 323, 613 A.2d 112 (1992), we determined that a lienholder must be advised of a pending judicial sale so that he may object. In *Muhlenberg*, we stated that the purpose of the issuance of writ of scire facias is to warn a lienholder of the existence of a claim so that he may make known any defenses he may have and to show why the property should not be under judicial subjection of a municipal lien.

Although these cases all emphasize the importance of a mortgagee's right to object to the sale of property where the mortgagee's interests are affected by the sale, they do not support Brown–Kellogg's contention. The crux of Brown–Kellogg's argument is that the notice here only provided Brown–Kellogg with an option to bid on the property at the sale, but did not allow Brown–Kellogg the opportunity to appear at a hearing and object to the sale before it took place. We cannot agree that Brown–Kellogg has been denied an opportunity for such a hearing. On the contrary, having received notice of the impending sheriff's sale, there was nothing to prevent Brown–Kellogg from seeking a stay of that sale so that it could present any legal or equitable argument as to why the mortgage should not be divested. Under the broad language of Pa.R.C.P. No. 3183, the court may stay execution on any legal or equitable ground. Indeed, the notice itself advised that remedial procedures were available to any person whose interests would be adversely affected by the sale. The fact that Brown–Kellogg did not make use of available procedures, does not mean that it was denied due process.

## II.

In a second argument, Brown–Kellogg asserts that the trial court erred in determining that the tax liens docketed in 1985 and 1986 were satisfied by the sheriff's sale of the real estate rather than by the funds escrowed with the federal district court.

As a general rule, a sheriff's sale of real estate discharges all liens on the property

sold unless the sale is expressly made subject to a prior lien or liens, or unless otherwise provided by statute. *Liss v. Medary Homes,* 388 Pa. 139, 130 A.2d 137 (1957). Section 8152 of the Judicial Code, 42 Pa.C.S. § 8152, enumerates circumstances under which a mortgage lien on real estate would remain unaffected by the execution sale of the property. Specifically, with exceptions not applicable here, that section provides that such sale will not divest the lien of a mortgage if the mortgage is prior to all other liens on the same property. 42 Pa.C.S. § 8152(a).[9] In this case, the 1985 and 1986 tax liens against Delmar's property were recorded prior to the recording of Brown–Kellogg's mortgage and remained unsatisfied at the time of the sheriff's sale.

However, Brown–Kellogg argues that because sufficient money existed in the escrow account to pay the delinquent taxes at issue prior to the sheriff's sale of January 6, 1992, the escrowed moneys acted constructively to satisfy the tax liens docketed in 1985 and 1986 and invalidate the sale in accordance with 72 P.S. § 5971i[10] and, under 42 Pa.C.S. § 8152(a), to give priority to the mortgage recorded by Brown–Kellogg so that it was unaffected by the sheriff's sale. We disagree.

We can find no authority allowing for "constructive" satisfaction of liens. Indeed, even judgments previously paid but not marked satisfied of record do not prevent divestiture of the lien of a subsequent mortgage by sheriff's sale. *Liss; Public Federal Savings & Loan Assoc. v. Neumann,* 334 Pa.Superior Ct. 389, 483 A.2d 505 (1984). Thus, the 1985 and 1986 tax liens were not *satisfied* before the sheriff's sale took place.

Moreover, the federal district court case ended with the distribution of $10,255.00 of the garnished rent money under a Consent Order which was entered in February of 1993. Even assuming that this money should be regarded as applied to Delmar's real estate taxes, as Brown–Kellogg argues, it could not have been used to satisfy the liens docketed in 1985 and 1986 as they were already satisfied by the sale of the real estate over one year before the Consent Order. Therefore, the trial court correctly determined that it was the 1992 sheriff's sale which acted to satisfy the 1985 and 1986 tax liens.

Here, Brown–Kellogg received actual notice of the sheriff's sale, and the escrowed funds from the federal district court case did not act to satisfy the 1985 and 1986 tax liens prior to the sale. Because Brown–Kellogg's mortgage did not predate the liens which were the basis for the sheriff's sale, the mortgage was divested by operation of statute when Brown–Kellogg failed to appear and bid on the property.

Accordingly, we affirm.

### ORDER

AND NOW, this 14th day of March, 1995, the order of the Court of Common Pleas of Allegheny County (at No. GD90–02400), dated June 20, 1994, is hereby affirmed.

---

**9.** 42 Pa.C.S. § 8152(a) provides that "a judicial or other sale of real estate shall not affect the lien of a mortgage thereon, if the lien of the mortgage is or shall be prior to all other liens upon the same property."

**10.** This section, *inter alia,* invalidates sales where the taxes have been paid prior to the sale.