**JP Morgan Chase Bank v. Zellin**

C.P. of Carbon County, no. 05-3469.

*Sheetal R. Shah-Jan,* for plaintiff.
*Stanley J. Zellin,* pro se.
*Kim Roberti,* for defendants Murphy and Keller.

NANOVIC, *P.J.*, March 1, 2007—

## FACTUAL AND PROCEDURAL BACKGROUND

The above-named plaintiff, JP Morgan Chase Bank, as trustee, is the assignee and current holder of a mortgage in the face amount of $89,000, dated June 11, 2003, and recorded on July 22, 2003. The property bound by the mortgage is that located at 344 East Ludlow Street, Summit Hill, Carbon County, Pennsylvania. This property was purchased by the defendants, James Murphy, Rachael Keller and David Keller (collectively, the buyers), at a sheriff's sale held on August 12, 2005, at the behest of the Panther Valley School District for unpaid school taxes due for the fiscal year 2003-2004. The defendant, Stanley J. Zellin, was the original mortgagor with Bank's predecessor mortgagee, Wilmington Finance Inc., and was the owner of the property at the time of the tax sale.

Bank commenced the instant proceedings for mortgage foreclosure by complaint filed on December 29, 2005. A default judgment in the amount of $94,019.43 was entered against Zellin on November 20, 2006, for failure to file an answer to the complaint. The buyers, in their defense to the Bank's action, contend, inter alia, that the Bank's mortgage was divested in the execution proceedings wherein they acquired title to the property.

Whether Bank's mortgage was divested by the sheriff's sale held on August 12, 2005, is the deciding issue in this litigation. The facts material to this issue are not in dispute, however, the parties disagree on the relevant law and its application. As a result, we have before us a pure question of law. Both parties have filed motions for sum-

mary judgment on this issue which we will now address.

## DISCUSSION

For the reasons which follow, we conclude that the mortgage was divested. In reaching this conclusion the importance of promptly recording a mortgage to preserve its priority and of correctly identifying the underlying statute pursuant to which a tax sale is held cannot be overemphasized.

With the exception of a purchase money mortgage, for which a 10-day grace period exists, the lien of a mortgage attaches when the mortgage is left for recording. 42 Pa.C.S. §8141(2). Accordingly, Bank's mortgage attained lien status on July 22, 2003, the date the mortgage was recorded.

A tax levy resolution establishing the millage for the school district's 2003-2004 real estate taxes was adopted on June 26, 2003. 24 P.S. §6-672. As a result, in accordance with the governing law discussed below, these taxes became a lien on affected real estate as of July 1, 2003, the first day of the district's fiscal year for which the tax was imposed. 24 P.S. §6-671. As a further result, the school taxes, though levied after the date of the mortgage, have a prior lien status because of the delay in filing the mortgage.

"As a general rule, a sheriff's sale of real estate discharges all liens [prior as well as subsequent liens] on the property sold unless the sale is expressly made subject to a prior lien or liens, or unless it is otherwise provided by statute, as in the case of certain mortgages, and in the case of tax and municipal liens." *Liss v. Medary*

*Homes Inc.,* 388 Pa. 139, 143, 130 A.2d 137, 139 (1957). (alteration in original) (citations and statutory authority omitted) By statute, with certain exceptions, a mortgage lien on real estate which is prior to all other liens upon the same property is unaffected by a judicial sale of the property. 42 Pa.C.S. §8152(a). These exceptions include:

"(1) taxes, municipal claims and assessments, not at the date of the mortgage duly entered as a lien in the office of the clerk of the court of common pleas; and

"(2) taxes, municipal claims and assessments whose liens though afterwards accruing have by law priority given them." 42 Pa.C.S. §8152(a)(2), (3).

On its face, this first exception appears to protect the Bank's mortgage from discharge: the lien of the School District's taxes, though accruing earlier in time had not, as of the date of the mortgage, been "duly entered as a lien in the office of the clerk of the court of common pleas." The statute does not, however, explicitly state that a mortgage lien will survive a judicial tax sale for delinquent taxes whose lien on the premises precedes the recording of the mortgage. See *In re City of Pittsburgh,* 243 Pa. 392, 90 A. 329 (1914) (statutory provision in derogation of the common law will be applied only if expressly stated or fairly implied from statute's language). Moreover, section 8152(c) provides:

"(c) Sale on prior lien.—A judicial or other sale of real estate in proceedings under a prior judgment or a prior ground rent, or in foreclosure of a prior mortgage, shall discharge a mortgage later in lien." 42 Pa.C.S. §8152(c).

It is at this point that the statutory basis for the sheriff's sale at which the buyers purchased the property must be

examined. Our Supreme Court has held that when a tax sale is commenced under a particular act of the General Assembly, "the procedure therein prescribed must be followed and *under that act alone* must the validity and effect of the sale be tested. Other legislation providing a different procedure or result cannot be used either to sustain such sale or secure additional rights or results. The act under which the proceeding is had must show the authority and the effect of such sale." *Gordon v. City of Harrisburg,* 314 Pa. 70, 73, 171 A. 277, 278 (1934) (emphasis added). The validity and effect of the school district's judicial sale must therefore be tested under the enabling legislation pursuant to which the sale was conducted, *without regard to any other legislation. City of Allentown v. Kauth,* 874 A.2d 164, 168 (Pa. Commw. 2005), *appeal denied,* 590 Pa. 670, 912 A.2d 839 (2006).

In this case, the school district proceeded under the Municipal Claims and Tax Liens Act (MCTLA), 53 P.S. §§7101-7505. Pursuant to that Act, the school district recorded a tax claim against the property on June 24, 2004.[1] On September 16, 2004, the district praeciped for

---

1. Under the MCTLA, the definition of taxes includes school taxes "together with and including all penalties, interest, costs, charges, expenses and fees, including reasonable attorney fees, as allowed by [the MCTLA] and all other applicable laws." A "tax claim" is a claim filed to recover taxes. 53 P.S. §§7101, 7200(a) and 7231. Taxes on real property are a first lien on such real property (but subordinate to the lien of taxes imposed by the Commonwealth) with every such lien dating "from the day on which the millage or tax rate is fixed by the proper authority of any such political subdivision, except where such taxes are imposed and assessed prior to the commencement of the fiscal year for which the same are imposed or assessed, in which case the lien of such taxes shall date from the first day of the fiscal year for which such taxes are imposed or assessed." 53 P.S. §7102. In order to

the issuance of a writ of scire facias sur tax claim and thereby commenced an action under the MCTLA to obtain a judgment on its claim. 53 P.S. §7185;[2] see also, *Baden Borough v. Koodrich,* 54 D.&C.2d 497, 498 (1972) (suit to recover upon a tax or municipal claim commences with the issuance of a writ of scire facias, not upon the filing of a municipal claim). A writ of scire facias was duly issued and served, and a default judgment for want of an answer was taken on October 29, 2004, in the amount of $1,761.84.[3]

Thereafter, on April 18, 2005, execution proceedings were commenced when the school district filed a praecipe for writ of execution pursuant to the Rules of Civil Procedure.[4] Notice of the sheriff's sale was given to all

---

preserve their lien status, tax claims must be filed on or before the last day of the third calendar year after that in which the taxes are first payable. 53 P.S. §7143. The school district's claim stated the amount of taxes due on the property to be $1,276.37.

2. Scire facias is a "judicial writ, founded upon some matter of record, such as a judgment or recognizance and requiring the person against whom it is brought to show cause why the party bringing it should not have advantage of such record." The Latin term is used to designate both the writ and the whole proceeding. Black's Law Dictionary 1208 (5th ed. 1979). *City of McKeesport v. Delmar Leasing Corp.,* 656 A.2d 180, 181 n.2 (Pa. Commw. 1995), *appeal denied,* 542 Pa. 636, 665 A.2d 470 (1995).

3. The difference between the amount of this judgment and the tax claim entered on June 24, 2004, is attributable to attorney fees, interest, and costs which were added to the claim.

4. Pa.R.C.P. 3190 states that a judgment in rem in an action or proceeding upon, inter alia, a municipal tax claim shall be enforced against the real property subject to the claim in accordance with Rules 3180 to 3183 governing the enforcement of judgments in mortgage foreclosure. Pa.R.C.P. 3181 provides that the procedure for the enforcement of a judgment shall be in accordance with the rules governing the enforcement of judgments for the payment of money with respect to (a) Commencement and issuance of writ:—Rules 3103(a), 3103(e)

parties having an interest in the property in accordance with Pa.R.C.P. 3129.1, 3129.2, and 3129.3. This notice included written notice of the intended sale to the Bank by first class mail, postage pre-paid, addressed to the Bank at "4 New York Plaza, 6th Fl., New York, NY 10004."[5]

The property proceeded to sheriff's sale on August 12, 2005, as scheduled, with the buyers being the successful bidders for a bid of $6,245. Title to the property was subsequently transferred to the buyers by sheriff's deed dated September 2, 2005, and recorded on September 6, 2005, in the Office of the Recorder of Deeds in and for Carbon County in Record Book volume 1367, page 46. The grantees in this deed are designated as "James Murphy 50 percent interest, Rachael Keller 25 percent interest, and David Keller 25 percent interest."

The foregoing makes clear that the sheriff's sale held on August 12, 2005, for unpaid school taxes was con-

---

and 3105 ... (f) Notice of sale, stay, continuance:—Rule 3129.1 through .3. *City of McKeesport,* 656 A.2d at 181-82 n.5.

5. The Bank, in its supplemental brief filed on February 9, 2007, opposing the buyers' motion for summary judgment, raises, for the first time, the sufficiency of this notice, contending that its address given in the assignment of mortgage from Wilmington Finance Inc. contained the following additional language which was not included in the address used by the school district in providing it notice of the sheriff's sale: "Attn: Institutional Trust Svcs./Structured Finance Svcs., SURF Series 2003-BC3." From this, the Bank concludes that the address was incomplete and the notice defective. Notwithstanding this argument, the Bank does not contend it did not receive notice of the sheriff's sale or that it has been prejudiced by the address used. To the contrary, in response to the buyers' motion for summary judgment filed on January 4, 2007, the Bank admitted having received this notice. (See buyers' motion for summary judgment and Bank's response, paragraph 25.)

ducted under the authority of the MCTLA. In accordance with *City of Allentown v. Kauth,* we must next determine what the effect of the sheriff's sale was under that Act on the Bank's mortgage. The issue is controlled by section 31 of the MCTLA. 53 P.S. §7281.

Under the MCTLA, all taxes imposed on real property by a municipality are a first lien on such property, subordinate only to tax liens imposed by the Commonwealth. 53 P.S. §§7102, 7103. Section 31 posits two classes of judicial sale when executing upon a tax or municipal claim: an initial upset sale, whether or not the upset price is bid, and a subsequent judicial sale, free and clear of all liens and encumbrances, whether accruing before or after the tax or municipal claim upon which the sale is based.[6]

For an upset sale, the upset price is the amount sufficient to pay all taxes and municipal claims, and all accrued but unfiled taxes and claims, in full. 53 P.S. §7279. In the event the proceeds at an upset sale are insufficient to pay the taxes and municipal claims in full, other than the tax or municipal claim upon which the sale is based (which claim will be discharged by the sale), the lien for those taxes and municipal claims which have not been

---

6. At this point, we are limiting our discussion solely to judicial sales in which the underlying lien being foreclosed upon is a tax or a municipal claim. With respect to judicial sales upon other than tax or municipal claims, taxes are a first lien entitled to priority in payment out of the proceeds of any judicial sale and, to the extent the sale's proceeds are insufficient to pay the tax or municipal claim in full, the lien of these claims will not be divested, whether or not such lien accrued prior in time to the lien being executed upon. 53 P.S. §§7103, 7104, 7106(a), and 7281; *In re Commonwealth, Department of Transportation,* 36 Pa. Commw. 346, 350, 388 A.2d 344, 346 (1978).

paid in full, to the extent of nonpayment, will not be divested from the property sold. 53 P.S. §7281.

Alternatively, if the upset price is not bid at the upset sale, the plaintiff on the claim may petition the court to issue a rule upon all interested parties (as evidenced by a search or title insurance policy produced by the plaintiff showing the state of the record and the ownership of the property) to show cause why the property should not "be sold, freed, and cleared of their respective claims, mortgages, charges, and estates." *Id.* Once the court is satisfied that the facts averred in the petition are true and that all interested parties have received proper notice, "it shall order and decree that said property be sold at a subsequent sheriff's sale day, to be fixed by the court without further advertisement . . . clear of all claims, liens, mortgages, charges, and estates, to the highest bidder at such sale." *Id.* This sale "divests all liens levied against the affected property [including prior mortgages] without exception." *City of Allentown v. Kauth,* 874 A.2d at 166; *Pittsburgh v. Fort Pitt Chemical Co.,* 345 Pa. 471, 472, 29 A.2d 41, 42 (1942).

The sheriff's sale in the sale sub judice was of the first type: an upset sale.[7] No petition was filed with the court to sell the property free and clear. As to the effect of such a sale on the Bank's mortgage, section 31 provides:

---

7. Although designated as an upset sale, as a sale under the MCTLA, it is also a judicial sale. *City of Uniontown v. McGibbons,* 115 Pa. Super. 132, 174 A. 912, 914-915 (1934). By definition, a judicial sale is "a sale under the judgment, order, or decree of the court; a sale under judicial authority, by an officer legally authorized for the purpose, such as a sheriff's sale, an administrator's sale, etc." *Id.* at 915. (quotation marks and citations omitted)

"Mortgages . . . which were recorded . . . before any tax other than for the current year accrue . . . shall not be disturbed by [any judicial] sale unless a prior lien is also discharged thereby." 53 P.S. §7281.

Under this section, mortgages recorded before any tax becomes a lien, other than taxes for the current tax year, will not be divested provided no lien prior to the mortgage is also discharged.[8]

---

8. As to any inconsistency between 42 Pa.C.S. §8152 and 53 P.S. §7281, if indeed inconsistency exists, the latter, being part of a full and complete statutory system for levying, preserving and collecting tax and municipal claims, and providing for the effect of judicial sales on liened property, controls over more general legislation dealing with the preservation of liens. 1 Pa.C.S. §1933 (providing that when a general provision in a statute is in conflict with a special provision in another statute and the two provisions cannot be reconciled, the special provision prevails, unless the general provision is enacted later and is intended by the General Assembly to control); see also, *Pittsburgh v. Fort Pitt Chemical Co.*, 345 Pa. 471, 473, 29 A.2d 41, 43 (1942).

In *Household Consumer Discount Co. v. Extended Care Center Inc.*, 299 Pa. Super. 74, 445 A.2d 154 (1982), the court held that a tax sale for unpaid taxes accruing in the same year as that in which the mortgage was recorded divested the mortgage because the mortgage "was filed *subsequent* to the tax lien that led to the sale of the property." *Id.* at 77, 445 A.2d at 155. In reaching its decision, the court expressly considered the applicability of section 8152 and found this section to be of no assistance to the mortgage holder. Of relevance, the court stated:

"At common law the rule was that a sheriff's sale automatically divested all liens, and statutes have therefore been necessary to change the common law and preserve the lien of a mortgage where it is *prior* to the lien under which a tax sale is made.

"We cannot conclude therefore that a statute must contain wording as to the effect of a sale for delinquent taxes in order to divest a mortgage; on the contrary, wording which *preserves* the lien of a prior mortgage would be necessary to provide the right." *Id.* at 76, 445 A.2d at 155. (citation omitted)

As applied to the Bank's mortgage, other than taxes which were accruing for the then current year (*i.e.,* the 2003-2004 school fiscal year), the record is devoid of any other tax lien having temporal priority to the mortgage. This notwithstanding, the August 2005 sheriff's sale on the unpaid 2003-2004 school taxes discharged the lien of those taxes, a lien predating the recording of the Bank's mortgage, and, by the plain language of section 31, also discharged the mortgage. Stated differently, because the lien of the Bank's mortgage did not pre-date the lien of the unpaid school taxes on which judgment

---

Thus, in the context of a mortgage filed in the same year as current taxes accrue, but after the tax lien date, the court held that the language of section 8152 alone was insufficient to protect the mortgage. This latter scenario is this case.

In *Household Consumer Discount Co.,* the effect of section 8152 vis-à-vis 53 P.S. §37541 was at issue. Unlike 53 P.S. §37541, the language of 53 P.S. §7281 itself provides for divestiture of the Bank's mortgage. In doing so, the conclusion we reach is strengthened even further from that reached in *Household Consumer Discount Co.*

We are aware of two cases which discuss the relationship between 21 P.S. §651, the predecessor to 42 Pa.C.S. §8152, and 53 P.S. §7281, however, in both, the court was faced with the issue of whether a prior mortgage could validly be divested by a judicial sale on a tax lien later in time when the section 31 procedure for a rule to show cause was invoked, given the language of what is now section 8152. *Erie v. Piece of Land,* 339 Pa. 321, 328 n.1, 14 A.2d 428, 431 n.1 (1940); *Pittsburgh v. Fort Pitt Chemical Co.,* 345 Pa. 471, 473, 29 A.2d at 43. Both cases are therefore distinguishable from the present situation where the Bank's mortgage is subordinate in lien position to the taxes being executed upon, and no petition was presented to the court for a sale free and clear of all liens and encumbrances. Consequently, in neither case did the court discuss the meaning or effect of the language in section 31 which we have identified in the text as it relates to the discharge of a mortgage in an upset sale.

was taken and execution held, the mortgage was divested at the sheriff's sale held pursuant to section 31 of the MCTLA.[9]

---

9. The Bank's argument that an upset sale under the MCTLA is the equivalent of an upset sale under the Real Estate Tax Sale Law (RETSL), 72 P.S. §§5860.101-5860.803, and should have the same effect, misconceives the discrete and independent nature of these two acts. The Bank's argument, in essence, is that, with respect to real estate taxes, both statutes have similar objectives—the preservation and collection of delinquent tax claims—and both employ similar mechanisms to effect collection: preferential lien status of the claim (compare 72 P.S. §5860.301 with 53 P.S. §7102); an initial upset sale (compare 72 P.S. §§5860.601 and 5860.605 with 53 P.S. §§7279 and 7281); and, in the absence of receipt of the upset price, provision for a "free and clear" judicial sale upon petition to the court (compare 72 P.S. §§5860.610 and 5860.612 with 53 P.S. §7281). These comparisons notwithstanding, the structural similarity of two statutes each of which deals with the subject of in rem tax collection does not compel, legally or logically, identical outcomes. "There is nothing inherently inconsistent in the existence of two distinct statutory procedures for the resolution of the same disputes, even though the result may be a lack of symmetry in the area." *City of Allentown v. Kauth*, 874 A.2d 164, 168 (Pa. Commw. 2005) (quoting *Pennsylvania Turnpike Commission v. Sanders & Thomas Inc.*, 461 Pa. 420, 429, 336 A.2d 609, 614 (1975)).

In *City of Allentown*, the Commonwealth Court held that the MCTLA and RETSL work concurrent to one another and provide alternative, not exclusive, means for the collection of delinquent tax claims. *Id.* at 169. The benefit of having this choice is well-illustrated by the present case where the two statutes, which have different notice requirements, act differently with respect to the effect of an upset sale on subordinate encumbrances. The RETSL does not require notice of an upset sale to third party lienholders and, consequently, does not divest any claims not included in the upset price. 72 P.S. §§5860.602 and 5860.609; see also, *First Pennsylvania Bank, N.A. v. Lancaster County Tax Claim Bureau*, 504 Pa. 179, 470 A.2d 938 (1983) (holding notice provision in former 72 P.S. §5860.602, which did not require either personal service or service by mail of an impending tax sale to a record mortgagee, violated the mortgagee's constitutional due process

## CONCLUSION

In accordance with the foregoing, the buyers' motion for summary judgment will be granted and that of the Bank denied.

rights). In contrast, an upset sale under the MCTLA is held under the auspices of the sheriff's office and is a judicial sale requiring notice to all parties in interest prior to the sale. As a consequence, loss of lien status is constitutionally permissible.